UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN COMBS,

     Plaintiff,

v.                                  Case No: 12-14528
                                       Hon. Victoria A. Roberts

CITY OF BIRMINGHAM, et al,

     Defendants.

_____/

## ORDER

## I.    INTRODUCTION

Michigan is not among the 25 states with a law requiring its citizens to provide identifying information to police officers during a lawful *Terry* stop. *See generally Terry v. Ohio*, 392 U.S. 1 (1968). In such states, police officers can detain citizens to compel the identifying information. The United States Supreme Court has upheld mandatory identification laws. *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177 (2004).

Here, there is no question that police officers had the right to stop Sean Combs as he openly carried a loaded assault rifle on his back, strolling the streets of downtown Birmingham: Mr. Combs had a youthful appearance and looked to be no more than 16 years old; officers reasonably believed him to be underage and in violation of Mich. Comp. Laws § 750.234f, which states "an individual less than 18 years of age shall not possess a firearm in public except under the direct supervision of an individual 18 years of age or older." Mich. Comp. Laws Ann. § 750.234f (West). "Open carry" means

1

carrying a firearm in public, and not concealing it from viewers. There is no question, too, that Mr. Combs repeatedly refused the police officers' request for identification to verify he was at least 18. Mr. Combs later provided his driver's license, and the police officers then knew that he was 18 and that he lawfully openly carried his weapon. However, the die was cast; his refusal to provide proof of his age and the events that transpired in connection with and after the refusal, but before the proof was presented, led officers to arrest Mr. Combs for resisting a police officer, breach of the peace, and brandishing.

This case is not about the legality of Mr. Combs carrying his rifle openly, or any right he may have to do so. In this 42 U.S.C. § 1983 case, Mr. Combs claims that his unquestionable Fourth Amendment right to be free from seizure without probable cause was violated through false arrest and false imprisonment. But, even in the absence of a mandatory state identification law in Michigan, the Court finds that under the totality of the circumstances, including Mr. Combs' youthful appearance, the police officers' request for proof that Mr. Combs was 18 constituted a lawful command; and, Mr. Combs' refusal to provide such proof gave the police officers probable cause to arrest him for resisting their lawful command under Birmingham, Mich., Code of Ordinances part II, ch. 74, art. II, § 74-27 and Mich. Comp. Laws § 750.479.

The principles of *Terry v. Ohio* require a suspect to supply proof of his age when the suspected criminal activity is a minor carrying a loaded weapon in public. And, the failure to supply such proof can lead to charges, including resisting a lawful command, breach of the peace, and brandishing.

However, even if the Court had found an absence of probable cause to arrest Mr.

2

Combs, these police officers would be entitled to the protection of qualified immunity because Mr. Combs' right is not clearly established in the contours of this particular situation: the police officers could have mistakenly concluded that it was reasonable to require Mr. Combs to prove his age so that they could assure themselves that a minor was not openly carrying a loaded assault rifle on a public street.

Because there was probable cause to arrest Mr. Combs for resisting--or the protection of qualified immunity--his false arrest/false imprisonment claims fail in their entirety, since probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause. *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Mr. Combs also filed a § 1983 malicious prosecution claim. This claim fails because Mr. Combs failed to provide evidence that the police officers made, influenced, or participated in the decision to prosecute him.

The Court **GRANTS** summary judgment in favor of Defendants and **DENIES** Mr. Combs' request for partial summary judgment.

## II.   BACKGROUND

The following facts are undisputed. On April 13, 2012, Mr. Combs and Lia Grabowski were walking on South Old Woodward Avenue in Birmingham, Michigan. Mr. Combs openly carried a vintage rifle on his back; he was 18 years old. At approximately 10:00 p.m., Birmingham Police Department officers Rebekah Springer and Gina Potts were on foot patrol and saw Mr. Combs. Based on Mr. Combs' youthful appearance,

3

Springer stopped Mr. Combs and questioned whether he was of legal age to carry a weapon; she asked him for identification to prove his age only:



(Defendant's Motion for Summary Judgment, Doc. 23, at Pg ID 109). Mr. Combs does not challenge the legality of this *Terry* stop.

Mr. Combs said he was 18, but repeatedly declined to provide identification; he said he was not legally required to do so under Michigan law. Supervising officer Michael Albrecht was called to assist. Upon his arrival, Albrecht asked Mr. Combs for identification. Mr. Combs refused to show identification unless he could be assured his name would not be placed in a report.

In the meantime, a crowd gathered to observe the exchange between the police and Mr. Combs. A woman in the crowd asked whether Mr. Combs was carrying a "real gun."

After Mr. Combs refused the police officers' request for identification they arrested him. Defendants say Mr. Combs was argumentative, caused a disturbance, and resisted the police officers. Because they could not confirm his age and right to

4

openly carry, Mr. Combs was also arrested for brandishing.

The parties dispute the time and the manner in which the police officers obtained Mr. Combs' identification, which he kept in his back pocket. Mr. Combs says he reached for it, held it out, and Springer took it before he was handcuffed and placed in the police car. Defendants say Springer picked up Mr. Combs' wallet from the ground after Mr. Combs was arrested. The parties agree this is not a factual dispute which the Court must resolve to decide the legal issues presented by these motions.

 After Mr. Combs' arrest and while still at the scene, the police officers identified him using his Michigan driver's license and determined he was 18. Nonetheless, Mr. Combs was transported to be booked; he was released after posting bond.

Mr. Combs was charged with brandishing a firearm, breach of the peace, and resisting a police officer.

The trial judge directed a verdict of not guilty on the charge of resisting a police officer. The jury acquitted Mr. Combs of brandishing a firearm and disturbing the peace.

On October 12, 2012, Mr. Combs filed this action, alleging  § 1983 claims of false arrest, false imprisonment, malicious prosecution, violation of his rights under the Second Amendment, and municipal liability against the City of Birmingham ("Birmingham").

The parties filed cross motions for summary judgment. Since filing, they stipulated to dismiss Mr. Combs' Second Amendment claim and defendants Potts and Birmingham. Mr. Combs' Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution against Springer and Albrecht remain.

5

### III.   STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence

6

and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).

## IV. ANALYSIS

### A. Collateral Estoppel does not bar consideration of Mr. Combs' claims on the merits

Defendants say they are entitled to summary judgment on all of Mr. Combs' claims--based on *res judicata*/collateral estoppel--because several state criminal proceedings addressed and decided there was probable cause for his arrest. If another Court decided there was probable cause to arrest Mr. Combs on the charges, that determination would be fatal to his § 1983 lawsuit. *See Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Haring v. Prosise*, 462 U.S. 306, 313 (1983)).

But, Mr. Combs says the Defendants' failure to raise or plead *res judicata*/collateral estoppel prior to summary judgment should result in the waiver of that

7

defense. Mr. Combs does not elaborate his argument. "[N]ot every failure to plead *res judicata* as an affirmative defense [under Rule 8(c)] . . . will result in a waiver of that defense," *Lesher v. Lavrich*, 784 F.2d 193, 196 (6th Cir. 1986). Since Mr. Combs does not support his argument, the Court considers the issue of *res judicata*/collateral estoppel on the merits.

Mr. Combs says whether probable cause existed to arrest, imprison, and prosecute him was neither raised nor determined in his criminal case in state court.

First, the parties' interchangeable use of the terms *"res judicata*" and "collateral estoppel" confuses the issue now before the Court. In *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, the Sixth Circuit noted that there is "perennial confusion over the vocabulary and concepts of the law of preclusion." 126 F.3d 849, 852 (6th Cir. 1997). The Sixth Circuit quoted the Supreme Court to clarify:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion."
>
> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel.
>
> Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. . . . Some commentators and court decisions have used the term "res judicata" as being virtually synonymous with "claim preclusion."

*Id.* (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984))

8

(citation omitted).

Based on *Heyliger*, it appears that Defendants are arguing collateral estoppel only; they say probable cause was litigated and decided in the state trial court and should be precluded from relitigation here. Therefore, the Court limits its analysis to the doctrine of collateral estoppel in Michigan.  *See Darrah*, 255 F.3d at 311. Collateral estoppel applies when:

> (1) there is identity of parties across the proceedings; (2) there was a valid, final judgment in the first proceeding; (3) the same issue was actually litigated and necessarily determined in the first proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citing *People v. Gates*, 434 Mich. 146, 155, 452 N.W.2d 627, 630 (1990)).

The elements of collateral estoppel are not satisfied. Mr. Combs' motions in state court involved constitutional challenges to the Birmingham ordinances on brandishing and breach of the peace, and the sufficiency of the evidence to satisfy the elements of brandishing and resisting.

Normally a state court's determination of probable cause at a preliminary hearing would preclude a § 1983 action. See *Darrah*, 255 F.3d at 311. However, because the charges against Mr. Combs were misdemeanors, there was no preliminary examination to decide probable cause; probable cause to arrest, imprison, or prosecute was never litigated in Mr. Combs' criminal case and the state court did not necessarily determine it.

Defendants' request for summary judgment based on collateral estoppel is **DENIED**.

9

**B. Mr. Combs' § 1983 Claims and Qualified Immunity**

Mr. Combs seeks summary judgment on his Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution. Defendants seek summary judgment in their favor and raise qualified immunity.

"Where any person acting under color of state law abridges rights secured by the Constitution or United States laws . . . § 1983 provides civil redress." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing 42 U.S.C. § 1983; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989)). "To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) a deprivation of a right secured under the Constitution or federal law; and (2) that a person acting under color of state law subjected him to the deprivation or caused him to be subjected to the alleged deprivation." *Alford v. City of Detroit*, 657 F. Supp. 2d 847, 852-53 (E.D. Mich. 2009) (citing *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003)).

The reach of § 1983 is not without limit. "Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (citation omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

To decide whether Defendants are entitled to qualified immunity at the summary judgment stage, the Court must engage in a two-step decisional process and consider: (1) whether the plaintiff has shown sufficient facts to make out a violation of a

10

constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has "discretion in deciding which . . . [prong] of the qualified immunity analysis should be addressed first in light of the circumstances" of the case. *Id.* at 236.

Once qualified immunity is raised, the plaintiff bears the burden to prove that the defendant is not entitled to it. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity is purely a question of law for the Court, and should be resolved as early in the case as possible. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir.1988).

### 1. Counts One and Two: There was probable cause to arrest Mr. Combs for resisting, and his constitutional rights were not violated through false arrest or false imprisonment

Mr. Combs does not challenge the reasonableness of the initial investigatory stop; he agrees the police officers had reason to question his right to openly carry a gun, given his youthful appearance. (Plaintiff's Motion for Partial Summary Judgment, Doc. 25 at Pg ID 272). Accordingly, the focus of the Court's analysis is Mr. Combs' claim that Defendants lacked probable cause to arrest and imprison him for resisting a police officer, breach of the peace, and brandishing.

Both Mr. Combs' false arrest and false imprisonment claims require him to prove that the police officers lacked probable cause. *See Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *Mansour v. W. Chester Twp. Bd. of Trustees*, 1:10-CV-880, 2011 WL 5403137 at *4 (S.D. Ohio Sept. 8, 2011) (citing *Wallace v. Kato*,

549 U.S. 384, 390 (2007)) ("Claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a species of false imprisonment.").

Probable cause exists when the "'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] ... that the suspect has committed, is committing, or is about to commit an offense.'" *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). Probable cause requires only a probability of criminal action, not an actual showing of such activity, *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983), nor some type of *prima facie* showing. *Criss*, 867 F.2d at 262. Courts look at this question through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives in arresting the plaintiff are irrelevant. *Id.*

Mr. Combs says the police officers lacked probable to arrest him for any of the charges because: (1) he did not physically interfere or threaten to interfere with the police officers (resisting); (2) he never acted in a threatening manner with the rifle (brandishing); and his actions and words did not create a disturbance (breach of the peace).

The Court begins its analysis with the charge of resisting a police officer. From the pleadings and evidence relied upon by the parties, it is not clear whether Mr. Combs was arrested for resisting a police officer under Birmingham Ordinance 74-27 or the

12

state statute which it references--Michigan Compiled Laws § 750.479--or both. Under either law, the police officers had probable cause to arrest Mr. Combs for resisting because of his repeated refusals to provide identification to verify his age.

Birmingham City Ordinance 74-27 states:

It shall be unlawful for any person to resist any police officer or other law enforcement agent while in the discharge or apparent discharge of his duty, or in any way interfere with or hinder him in the discharge of his duty.

Birmingham, Mich., Code of Ordinances part II, ch. 74, art. II, § 74-27, *available at* http://library.municode.com/index.aspx?clientId=10445.

Birmingham Ordinance 74-27 refers to § 750.479:

(1) A person shall not knowingly and willfully do any of the following:

(a) Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.

(b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the common council or village council of an incorporated village, or a township board of a township.

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command. . . ."

Mich. Comp. Laws § 750.479.

Contrary to Mr. Combs' position and the finding of the state court in directing a verdict in favor of Mr. Combs on the resisting charge, neither the Birmingham Ordinance nor § 750.479 requires a physical threat for a violation to occur.

13

In analyzing an East Lansing "obstruction" ordinance similar to the Birmingham Ordinance, the Sixth Circuit found that the East Lansing ordinance did not "as a whole imply that physical interference is required to establish a violation." *Risbridger v. Connelly*, 275 F.3d 565, 568-70 (6th Cir. 2002) (The East Lansing ordinance made it a misdemeanor to "[a]ssault, obstruct, resist, hinder, or oppose any member of the police force . . . in the discharge of his/her duties as such." (quoting EAST LANSING, MICHIGAN, Code, Title IX, Ch. 108, § 9.102(19))).

Furthermore, this Court found probable cause to arrest a plaintiff for a violation of an Eastpointe Ordinance very similar to the Birmingham Ordinance. In that case, too, there was the absence of physical interference or the threat of it. *See Devoe v. Rebant*, 05-71863, 2006 WL 334297, at *4 (E.D. Mich. Feb. 13, 2006) ("Eastpointe Ordinance 658.03 provides in relevant part that '[n]o person shall resist, hinder or abuse any police officer in the performance and execution of his or her office.'").

Mr. Combs' insistence that there was no probable cause to arrest him for resisting because there was no physical threat on his part, stems from his misplaced reliance on *People v. Vasquez*, 465 Mich. 83, 631 N.W.2d 711 (2001). In *Vasquez*, the Michigan Supreme Court held that "obstruct[ing]" under § 750.479 included "threaten[ing], either expressly or impliedly, physical interference and actual physical interference with a police officer." 465 Mich. at 100. The court stated that "passive conduct may sometimes be sufficient to constitute obstruction under [§ 750.479]" but only if that passive conduct "rises to the level of threatened physical interference." *Id.* at 97.

14

In *United States v. Blomquist*, the Sixth Circuit recognized the limits of the 2001 decision in *Vasquez* in light of the Michigan legislature's 2002 amendment to § 750.479. 356 F. App'x 822 (6th Cir. 2009). In response to *Vasquez*, the Michigan legislature chose "to define 'obstruct' as including 'the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command.*' " *Id.* at 826 (quoting Mich. Comp. Laws § 750.479(8)(a)) (emphasis in original). The Sixth Circuit also noted that the amendment to § 750.479 reflected the Michigan legislature's intent to clarify the correct interpretation of the statute, rather than to change its meaning, and held that the amended § 750.479 incorporates both the *Vasquez* interpretation and the "knowing failure to comply language." *Id.* at 828 (the amendment of § 750.479 "suggest[s] a desire by the Michigan legislature to clarify that 'obstruct[ing]' is not limited to the interpretation set forth in *Vasquez*."). Section 750.479 "does not require a use or threatened use of force. Rather, a person can violate the statute simply by 'knowing[ly] fail[ing] to comply with a lawful command.'" *Id.* at 826. Accordingly, probable cause to arrest Mr. Combs for a violation of § 750.479 did not require actual physical interference or the threat of it; Mr. Combs was arrested for his failure to abide by that portion of the statute which required him to comply with the lawful command to supply proof of his age.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty*., 542 U.S. 177 (2004) is instructive to the Court's determination that the police officers' request for proof of Mr. Combs' age was a lawful command, and to the Court's finding that there was probable cause to arrest Mr. Combs for resisting a police officer. In *Hiibel*, the Supreme Court held that during lawful *Terry* stops, police officers may compel suspects to provide their

15

names and, pursuant to state law, may arrest suspects who refuse to do so. *Id.* at 185–88. The Supreme Court reasoned that obtaining a person's identification during a *Terry* stop is a "commonsense inquiry" that "serves important government interests": it may "inform an officer that a suspect is wanted" or may "help clear a suspect and allow the police to concentrate their efforts elsewhere." *Id.* at 186, 89. The police must have a reasonable basis for stopping the suspect and "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Id.* at 188.

*Hiibel* involved a person lawfully stopped under *Terry* who refused to give his name, in a state which legally required it. However, the law did not require the citizen to provide identification. *See id.* at 185. While there are important distinctions between *Hiibel* and this case--specifically, name versus age, and stop and identify law versus must comply with a lawful command law--the *Terry* principle reaffirmed in *Hiibel* and applicable here is this: demanding and obtaining certain identifying information from a suspect may be a critical and legitimate component to a *Terry* stop. In this instance, the discrete command to Mr. Combs to prove his age was reasonably related to the investigation of a potential underage person carrying a gun in public, in violation of § 750.234f.

The Court also finds *Klaucke v. Daly* helpful. In a case from Massachusetts--a state without a stop and identify law--the First Circuit held that during a lawful *Terry* stop, a police officer's demand to see the drivers' license of a person suspected of being underage and carrying alcohol was reasonable, and that the police officer was not

16

required to accept the person's word that he was 21, without proof. 595 F.3d 20, 25 (1st Cir. 2010) (The police officer's "demand for identification, plainly, was reasonably related to his suspicion that [the plaintiff] was underage. Under the circumstances of this case [where the plaintiff repeatedly refused to show identification], the officer was not required to take [the plaintiff] at his word that he was 21.").

Accordingly, even in the absence of a stop and identify law in Michigan, the police officers' request that Mr. Combs provide identification that would prove his age was a lawful command, based on this Court's finding that: (1) *Hiibel* stands for the proposition that identifying information can be required of suspects during a *Terry* stop; and (2) a police officer can require proof to dispel reasonable suspicions of underage violations of the law during a *Terry* stop. The police officers' requests were reasonably related to the circumstances justifying Mr. Combs' legal *Terry* stop; they investigated a suspected violation of the underage weapon statute, based on a reasonable suspicion that Mr. Combs was not 18.

Viewed at the time of the incident, a reasonable police officer on the scene would believe that Mr. Combs' refusal to provide proof of his age constituted resisting or a knowing failure to comply with a lawful command. Probable cause to arrest a person for violation of either the Birmingham Ordinance or § 750.479 does not require an actual physical interference or the threat of it. Therefore, Mr. Combs' refusal to provide proof of his age supplied probable cause to arrest him for resisting/obstructing. *See Devoe v. Rebant*, 05-71863, 2006 WL 334297, at *4 (E.D. Mich. Feb. 13, 2006) (After the officers lawfully stopped [the plaintiff], his refusal to provide identification and cooperate

17

provided probable cause to arrest him for hindering and obstructing in violation of [§ 750.479] and/or Eastpointe Ordinance 658.03."). Mr. Combs' false arrest/imprisonment claims based on resisting a police officer fail.

### 2. Counts One and Two: Because there was probable cause to arrest Mr. Combs for resisting, his false arrest/imprisonment claims related to breach of the peace and brandishing also fail

Mr. Combs' false arrest/imprisonment claims based on breach of the peace and brandishing also fail; the Court need not consider whether there was probable cause to arrest for these offenses because probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause. *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed.") (emphasis added); *Atkins v. Twp. of Flint*, 94 F. App'x 342, 348 (6th Cir. 2004) ("[T]o avoid § 1983 liability, Defendants only needed probable cause to arrest . . . on a charge; they did not need probable cause to arrest . . . on all charges.").

There are no genuine issues of material fact. Defendants are entitled to summary judgment on Mr. Combs' false arrest and false imprisonment claims in Counts One and Two.

18

### 3. Under the circumstances of this case, reasonable police officers could differ on whether probable cause existed to arrest Mr. Combs; Defendants are entitled to qualified immunity even in the absence of probable cause

A right is clearly established when the "'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "An action's unlawfulness can be apparent even in novel factual circumstances 'so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 607 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

The Supreme Court in *Anderson v. Creighton* gave little guidance on how to determine the "contours" of a clearly established constitutional right. But, the Supreme Court recognized and allowed for the possibility that a police officer may "reasonably, but mistakenly, conclude that probable cause is present." *Id.* at 641.

Later in *Saucier v. Katz*, the Supreme Court concluded that the critical issue is whether the officer made a reasonable mistake about the state of the law. 533 U.S. 194 (2001). The Sixth Circuit held that "[q]ualified immunity extends to government officials' objectively reasonable mistakes, 'regardless of whether the government official's error is a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Hensley v. Gassman*,  693 F.3d 681, 687 (6th Cir. 2012) (quoting *Peason v. Callahan*, 555 U.S. 231, 231 (2009)).

Thus, the question can be framed as follows: did the police officers have

19

arguable probable cause to arrest Mr. Combs for resisting, breach of the peace, and brandishing?  Did the police officers reasonably believe there was probable cause to effectuate an arrest? Could a reasonable police officer have mistakenly concluded there was probable cause to arrest on these three charges? *Sussman v. Dalton*, 11-13247, 2012 WL 5874769, at *5 (E.D. Mich. Nov. 20, 2012).

Defendants say that there was no clearly established law which provided guidance to officers on how to handle a suspected underage person carrying a loaded rifle in public, in a state like Michigan where open carry is lawful but there is no stop and identify law.

Plaintiff says his right is clearly established because: (1) brandishing is defined; (2) resisting a police officer is defined and a properly trained officer would know what constitutes resisting; and (3) Plaintiff exercised free speech in speaking to the police officers, a clearly established right as well.

While in broad context, there is no question that the right to be arrested only on probable cause is clearly established, *Crockett v. Cumberland Coll.*, 316 F.3d 571, 584 (6th Cir. 2003), in each case, the Court determines whether a right is clearly established "in light of the specific context of the case not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

At the time of Mr. Combs' arrest, there was no clearly established federal law which allowed a police officer to require a citizen to prove his age during a lawful *Terry* stop, in a state which does not require its citizens to provide identifying information during a *Terry* stop, but does have a law which requires people to comply with officer's

20

lawful requests. Indeed, it was not until 2004 that the Supreme Court definitively held that reasonable suspicion, giving rise to a valid investigatory stop, was a sufficient basis to predicate a demand for identification punishable by arrest for noncompliance. *See Hiibel*, 542 U.S. 177, 186-87; *see also Brown v. Texas, 443 U.S. 47, 53 n. 3 (1979)* (leaving question open); *Risbridger v. Connelly*, 275 F.3d 565, 572 (6th Cir. 2002); *Oliver v. Woods*, 209 F.3d 1179, 1189-90 (10th Cir. 2000); *Albright v. Rodriguez*, 51 F.3d 1531, 1537-38 (10th Cir. 1995); *Gainor v. Rogers*, 973 F.2d 1379, 1386 n. 10, 1389 (8th Cir.1992); *Tom v. Voida*, 963 F.2d 952, 959 & n. 8 (7th Cir. 1992).

Although *Hiibel* has been the law of the land since 2004, one could argue it only applies in states with stop and identify laws. This case involves a request for identification to verify age in a state without a stop and identify law, but with a law requiring compliance with police officers' commands. The Supreme Court has only addressed the legality of an arrest for failure to provide a name during a *Terry* stop.

Consequently, probable cause may not be sufficiently clear in the contours of this particular situation, such that police officers would understand that their request for Mr. Combs to prove his age may violate the law. In other words, while police officers always need probable cause to arrest, it may be arguable that Mr. Combs' failure to supply proof of his age amounted to probable cause to arrest him. Because reasonable police officers could disagree, Defendants are entitled to qualified immunity on Mr. Combs' false arrest and false imprisonment claims, even if the Court found an absence of probable cause to arrest him.

21

**4. Count Three: Mr. Combs was not maliciously prosecuted**

Mr. Combs' claims malicious prosecution, based on Springer and Albrecht's alleged: (a) initiation of criminal proceedings against him without probable cause; and (b) false testimony against him at his criminal trial.

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration. . . . The tort of malicious prosecution is entirely distinct from that of false arrest, as the malicious prosecution tort remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citation omitted) (internal quotation marks omitted).

In a § 1983 malicious prosecution claim premised on a violation of the Fourth Amendment, a plaintiff must prove: "[1] that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute; . . . [2] that there was a lack of probable cause for the criminal prosecution; . . . [3]  that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure; . . . [and] [4] the criminal proceeding . . . [was] resolved in the plaintiff's favor. *Id.* at 308-09 (citations omitted) (internal quotation marks omitted).

The Court considers "not only whether . . . Defendants had probable cause to arrest . . . Plaintiff but also whether probable cause existed to initiate the criminal proceeding against . . . Plaintiff." *Sykes*, 625 F.3d at 310-311; *see also Phat's Bar & Grill*

22

*v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 661 (W.D. Ky. 2013).

"Participate" as used in the first element of a § 1983 malicious prosecution claim means that the defendant "aids in the decision [to prosecute], as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 308 n. 5; *see also Hollis v. Bullard*, 10-10729, 2011 WL 5184228, at *5 (E.D. Mich. Nov. 1, 2011).

It is undisputed that a criminal prosecution was initiated against Mr. Combs and that it resolved in his favor. And, Mr. Combs suffered a deprivation of liberty; this malicious prosecution element is satisfied where the plaintiff is arrested, taken to jail, and arraigned, see *Guerra v. Rodriguez*, 2012 WL 208083, at *10 (E.D.Ky. Jan. 24, 2012), or arrested, booked, and released upon bond after a pretrial hearing. *Amine v. King*, 2011 WL 4387229, at *12 (E.D.Mich. Sept. 21, 2011).

Mr. Combs says Springer and Albrecht's active participation in the decision to prosecute him is clear because they: (1) signed a State of Michigan Uniform Law Citation as the complainants and served it on Mr. Combs--it lists the three misdemeanor charges and instructs Mr. Combs to appear in court; and (2) they gave false testimony against Mr. Combs at trial.

This does not satisfy Mr. Combs' burden to show that the police officers made, influenced, or participated in the decision to prosecute him. *See, e.g., McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (holding that the plaintiff's malicious prosecution claim failed when the plaintiff "present[ed] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor's] decision to bring charges against [the plaintiff]").

23

The Sixth Circuit has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful. *Kinkus v. Village of Yorkville, Ohio*, 289 F. App'x. 86, 91 (6th Cir. 2008) (citing *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002)). In *Kinkus*, a police officer could not be held liable based on completing a police report and signing a blank misdemeanor criminal complaint form that did not recommend a particular charge, because those documents were ultimately forwarded to the prosecutor who made the decision to prosecute. *Id.*

Mr. Combs provides no evidence that officers Springer and Albrecht did anything to cause Mr. Combs to be prosecuted, apart from providing the police report and being identified as the complaining witnesses in the citation. Such actions do not rise to the level of participation required under *Sykes. See D'Angelo v. Clinton Twp.*, 10-12195, 2011 WL 4888904, at *6-7 (E.D. Mich. Oct. 13, 2011) ("creating a police report and being identified as the complaining witness on the misdemeanor complaint . . ." do not support a malicious prosecution claim); *see also Hollis v. Bullard*, 10-10729, 2011 WL 5184228, at *5 (E.D. Mich. Nov. 1, 2011) ("Other than [the police officer] presumably providing his police report to the prosecutor and being identified as the complaining witness, Plaintiff produces no evidence that [the police officer] actually conferred with the prosecutor in deciding to prosecute Plaintiff."). And, Mr. Combs does not argue--and the evidence does not show--that the information in the police report and citation is false.

Furthermore, the police officers' testimony at trial is inconsequential to a decision

24

to prosecute Mr. Combs. Also, the Supreme Court has held that trial witnesses, including police officers, have absolute immunity with respect to any § 1983 claims arising from that testimony, even if it is alleged that such testimony was perjured. *Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983).

Accordingly, Mr. Combs fails to present sufficient evidence to satisfy the participation element of a malicious prosecution claim. Since Mr. Combs' constitutional rights were not violated, the Court need not consider whether there was probable cause to arrest and prosecute him on each charge.

There is no genuine issue of material fact. Defendants are entitled to summary judgment on Mr. Combs' malicious prosecution claim in Count Three.

## V.    CONCLUSION

Mr. Combs was not falsely arrested or falsely imprisoned. The police officers had probable cause to arrest him for resisting, given his refusal to comply with their lawful command to prove his age and dispel their reasonable suspicion--based on his youthful appearance--that he violated Mich. Comp. Laws § 750.234f. Alternatively, Defendants are entitled to qualified immunity because there was no clearly established law providing guidance to officers on how to handle a suspected underage person carrying a loaded rifle in public, in a state like Michigan where open carry is lawful but there is no stop and identify law. Reasonable officers could differ on whether probable cause existed.

In addition, the police officers did not maliciously prosecute Mr. Combs; there is no evidence that they made, influenced, or participated in the decision to prosecute him.

The Court **GRANTS** summary judgment in favor of Defendants and **DENIES** Mr.

25

Combs' request for partial summary judgment.

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 30, 2013

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
August 30, 2013.

S/Linda Vertriest
Deputy Clerk